# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT COURT OF KENTUCKY
## PADUCAH DIVISION
### Case No.: 5:19-cv-00149-TBR

KEVIN WILEY                                                                             PLAINTIFF

v.

MARQUETTE TRANSPORATION COMPANY, LLC                                             DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Marquette Transportation Company, LLC's ("Marquette") Motion for Partial Summary Judgment. [DN 33]. Plaintiff Kevin Wiley ("Wiley") has responded. [DN 39]. Marquette has replied. [DN 42]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Marquette's Motion for Partial Summary Judgment [DN 33] is **GRANTED IN PART** and **DENIED IN PART**.

### I. Background

This suit arises out of injuries occurring October 4, 2018. On October 4, 2018, Wiley was working on the Mary Kay Eckstein vessel. He was tasked with packing rigging material. [DN 39 at 2]. Wiley was lifting and carrying barge cables, ratchets, and chains alone. [*Id.* at 3]. While working, Wiley experienced neck pain. [*Id.*] He informed his supervisor, Thomas Cottrell that his neck was hurting. [DN 39-1 at 144].

After finishing with the wires, Wiley went to help "face the boat up." [*Id.* at 148]. While facing the boat up, the captain began tightening the winch. [*Id.* at 149]. As the winch was tightening, Wiley and his coworker, Cory, decided they needed to distance themselves from the winch. [*Id.* at 152]. Wiley was walking at a fast pace down the tow knee steps with his right hand on the handrail and felt his shoulder dislocate. [*Id.* at 153]. After Wiley's shift was over, he

informed Thomas of his shoulder dislocating and later informed the captain while eating. [*Id.* at 155-156].

Wiley has brought a claim of maintenance and cure and Marquette seeks to dismiss this claim.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## III. Discussion

A shipowner's duty to provide maintenance and cure "arises regardless of fault and whether or not employment on the ship actually caused the seaman's injury." *Cunningham v. Interlake S.S. Co.*, 567 F.3d 758, 761 (6th Cir.2009). Maintenance refers to the shipowner's duty to provide food and lodging while cure is the shipowner's duty to provide medical care and attention "during the period of injury or illness." *Id.* In order to recover for maintenance and cure, Plaintiff must demonstrate that "(1) he was working as a seaman, (2) he became ill or injured while in the vessel's service, and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury." *West v. Midland Enterprises, Inc.,* 227 F.3d 613, 616 (6th Cir.2000). Any ambiguities or doubts should be resolved in favor of Plaintiff. *Id.* (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962)).

Marquette argues Wiley is not entitled to maintenance and cure because he concealed material medical facts that are causally connected to the injury sustained on the Mary Kay Eckstein.

In *McCorpen v. Central Gulf Steamship Corp.*, the court stated,

> [W]here the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure…Of course, the defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage.

396 F.2d 547, 549 (5th Cir. 1968). The Sixth Circuit adopted *McCorpen* and its progeny in *West*. *West,* 227 F. 3d at 617.

### A. Intentionally Misrepresented or Concealed Medical Facts

According to Fifth Circuit precedent, the intentional concealment prong of *McCorpen* is essentially an objective inquiry. *Brown* v. *Parker Drilling Offshore Corp*., 410 F.3d 166, 174 (5th Cir. 2005). In *Brown*, the Fifth Circuit noted that where an interview or questionnaire requests disclosure of material medical facts and the seaman fails to provide such facts, the intentional concealment prong is satisfied. *Id.* (internal citations omitted). "*McCorpen's* intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination." *Id.* at 175.

June 4, 2014, Wiley was seen at CHRISTUS St. Frances Cabrini Hospital due to a "[f]all 6 weeks ago with persistent neck pain left arm pain." [DN 35-8 at 2]. He had a CT scan of the cervical spine which showed no abnormalities. [*Id.*] Wiley was seen at CHRISTUS again on July 4, 2014 for shoulder pain. [DN 35-9 at 2]. According to records from Louisiana Occupational Health Services, Wiley was seen on March 30, 2016 after falling into a 4-inch pole. [DN 35-10 at 2]. This fall resulted in "immediate pain all up and down his midback [and] his neck was burning for the first few hours". [*Id.*] In 2016, Wiley was seen "at the Cabrini Hospital Emergency Room in Alexandria, Louisiana because he believed his shoulder had popped out or dislocated…the physician informed him that his shoulder had not dislocated and released him from further care." [DN 35-7 at 4]. Wiley was examined at Fastmed Urgent Care in Texas due to shoulder pain on March 6, 2017. [DN 35-11 at 2]. Wiley stated his shoulder popped out on March 4, 2017 and he was able to pop it back in but was experiencing pain. [*Id.*] He reported a history of "dislocating right shoulder and popping shoulder back in". [*Id.*] Wiley was prescribed medication and released from care. [*Id.* at 4]. Finally, Wiley was seen in the emergency room at CHRISTUS for right shoulder pain on March 25, 2018. His shoulder "dislocated Friday night, put it back in place

immediately [but] pain still continues". [DN 35-12 at 2]. He was discharged without any follow-up required.

Marquette required Wiley to complete a health status questionnaire prior to his employment. The questionnaire asked Wiley to indicate if he ever had a variety of conditions including neck pain and shoulder problems/dislocations. [DN 35-2 at 1-2]. Wiley answered that he had not experienced problems with either. A separate medical history questionnaire asked if Wiley had experienced pain or injury to his neck or shoulders. [DN 35-3 at 2]. The form also asked Wiley to mark on a picture of a body where any injuries or frequent pain had occurred. [*Id.*] Wiley did not disclose any injury history or pain experienced to these areas. The medical history questionnaire also asked if Wiley had been seen in an emergency room or hospitalized in the last five years. [*Id.* at 3]. Wiley answered no. [*Id.*] Finally, the form asked if Wiley had ever had an MRI, C.T. Scan or X-ray of his neck, arms, back, hips, knees, legs, ankles or feet. [*Id.* at 4]. Wiley answered no. [*Id.*]

Wiley completed a medical history form for HealthWorks Medical. This form also asked about any history of shoulder injuries. [DN 35-4 at 1]. Wiley did not indicate any history of shoulder injuries. [*Id.*] The form goes on to ask about pain experienced in the neck and shoulders. [*Id.* at 3]. Wiley again indicated that he did not suffer from any condition. [*Id.*] Wiley completed the above mentioned pre-employment medical forms on June 18, 2018.

In *Keeney v. Ingram Barge Company,* Keeney was a deckhand on the Willard Hammond in 2012. 184 F. Supp. 3d 601, 604 (M.D. Tenn. 2016). Keeney generally alleged he injured his back while pulling wires by himself. *Id.* In 2008 or 2009, Keeney was in a car accident that resulted in him experiencing back pain. *Id.* at 605. In March of 2009, Keeney reported to his nurse practitioner "that the severity of his back pain was a 7 out of 10, and that, to help with the pain, he

had a woman burn his arms with a cigarette to override it." *Id.* Keeney had an x-ray of his lower back which came back clear. *Id.* at 605-606. Keeney answered "no" on several medical forms that asked about previous *injuries* to his back. *Id.* at 606 (emphasis added). Keeney argued his answers were truthful "because he was told by his nurse practitioner…that 'nothing was wrong with him' after his x-ray results were negative." *Id.* Ingram Barge Company argued Keeney was "prohibited from recovering maintenance and cure because he intentionally concealed a preexisting medical condition." *Id.* at 611. The court stated:

> The first requirement, intentional concealment, is an objective inquiry, which does not look to any subjective analysis, such as reasons for concealment. The court is faced here with a dispute of fact over whether Keeney *ever had* a back injury—as opposed to, for example, any other type of injury—as a result of his car accident. The existing medical evidence—an initial report of pain and a clear x-ray—were contradictory. Keeney was cleared by his medical practitioner. It is plausible, then, that in 2011, when he filled out his Medical Submission Form, Keeney could have been under the objective impression that he had never had a prior *injury* to his back. These questions about Keeney's medical history, as well as Keeney's objective understanding of whether he ever had a back injury, are issues for trial.

*Id.* at 612 (emphasis added).

*Kenney* and the present case share some similarities but also have key differences. Like Kenney, Wiley has previously experienced pain to the parts of his body at issue. Further, Wiley has never received an official injury diagnosis to either his neck or shoulder like Kenney. On two prior occasions, Wiley experienced neck pain. The first time, he received a C.T. scan that was normal. The second time, he did not receive any diagnosis of a neck injury. Wiley sought treatment for his shoulder on multiple occasions. He never received a diagnosis from a doctor and the imaging he had done produced normal results. However, that is where the similarities end.

In *Keeney*, there was only clear evidence that he reported back pain to his nurse practitioner on one occasion after the car accident. "Keeney's records reflect a reference to pain for three to four years." *Id.* at 606. However, there was a dispute as to whether Keeney himself made those

6

complaints or his father made those statements. *Id.* Here, there is no doubt that Wiley has a history of both neck and shoulder pain. Wiley sought out treatment for either his neck or shoulder on six different occasions. Although Wiley never received an official injury diagnosis, Wiley himself reported a history of "dislocating right shoulder and popping shoulder back in" to multiple doctors.

In *Keeney,* the Medical Submission Form Keeney completed asked about prior *injuries*. *Id.* at 606 (emphasis added). Here, the Health Status Questionnaire asked "if you **_ever had_** or **_now have_**" neck pain or shoulder problems/dislocations. [DN 35-2 at 1-2]. The Medical History Questionnaire asked if "you ever had an injury *or pain*" in your neck or shoulders. [DN 35-3 at 2 (emphasis added)]. The HealthWorks Medical pre-employment form asked if you "currently have or had had in the past year" "pain, weakness, numbness" in your shoulder. [DN 35-4 at 3]. Although Wiley had not complained of neck pain in the prior year, he visited the emergency room three months prior to completing this form for right shoulder pain. [DN 35-12 at 2]. The medical forms did not only ask about injuries. The forms clearly inquired into pain experienced in certain areas and Wiley failed to disclose the pain he experienced in his neck and shoulder. Wiley's failure to disclose his prior hospital visits because he did not consider those visits for "major injuries" cannot excuse his failure to report pain he experienced in his neck and shoulder. Therefore, Marquette has met the first factor.

**B. Materiality**

"The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown,* 410 F.3d at 175. However, "[i]f the vessel owner would have employed the seaman even had the requested disclosure been made,

concealment will not bar the seaman's recovery of maintenance and cure." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir.2006).

Marquette argues the multiple medical forms it required Wiley to complete prior to employment and Dr. James Turnbo's statement that he would have required further investigation if Wiley disclosed his medical history are enough to show materiality. Wiley argues Marquette has not shown it would not have hired Wiley even if he disclosed his medical history and therefore has not shown materiality. The Court agrees with Marquette.

Dr. Turnbo, Corporate Medical Director for Marquette, reviews the medical history forms and pre-employment physicals to "determine whether, based on the physical and the questionnaire, the job applicant should be hired immediately, rejected from the application process, or whether further investigation into a medical condition is necessary before approving a job offer." [DN 35-15 at 1]. Dr. Turnbo stated, if Wiley "disclosed that he had a prior history of medical treatment for pain in his neck, I would have required an investigation into the current status of his medical condition, medical records from his treating physicians, and an analysis of those records to determine whether he could safely perform the work of a deckhand." [*Id.* at 2]. Dr. Turnbo went on to state, "[h]ad Mr. Wiley disclosed that he had a prior history of shoulder dislocations, I would not have recommended Mr. Wiley for work as a deckhand." [*Id.*]

Wiley cites to *Dauzat v. Weeks Marine, Inc.* to support his position. In *Dauzat*, Plaintiff slipped while walking down a stairwell onboard. 2016 WL 3167662, *1 (E.D. La. June 7, 2016). Plaintiffs alleged injuries to his leg, back, and hip. *Id.* Defendants argued Plaintiff was not entitled to maintenance and cure because he concealed two prior back injuries. *Id.* at 2. Plaintiff argued the back injuries were not material because nobody with hiring authority stated he would not have been hired if he disclosed the injuries. *Id.* at 3. The court held, "Defendants have not provided any

8

competent summary-judgment evidence from Ramos or anyone else with the authority to make hiring decisions for Weeks or Atlantic to establish that the misrepresentation or concealment was material to Defendants' hiring decision." *Id.* at 4.

However, *McCorpen* has specifically rejected this argument. 396 F.2d at 550-551. Further, this Court has also previously rejected this argument. In *Gifford v. American River Transp. Co.,* Plaintiff concealed her lupus diagnosis on pre-employment medical forms. 833 F. Supp. 2d 684, 692. Defendants attached an affidavit from Dr. Still who "was responsible for reviewing the pre-employment physicals and medical history forms of ARTCO applicants." *Id.* at 693. Dr. Still stated:

> [h]ad Ms. Gifford disclosed she had lupus, I would have required an investigation into the current status of her medical condition, medical records from her treating physicians, and an analysis of those records to determine how far the disease had advanced and whether she could safely perform the work of a towboat cook.

*Id.* The court agreed with Defendant's argument "that because further investigation would have been necessary, there is no genuine issue of material fact as to whether the facts concealed by Plaintiff were material." *Id.*

The current case presents the same issue. Dr. Turnbo has stated further investigation into Wiley's fitness to perform the job of a deckhand would have been required if his medical history was disclosed. Although Marquette has not stated with certainty that it would not have hired Wiley, Dr. Turnbo's statement that further investigation would have been required is enough to render this information material.

Wiley's arguments that he was able to "keep up" with other crew members and that he passed the pre-employment physical are also of no avail. In *Brown,* the Plaintiff argued he was able to "perform heavy labor tasks for his first few months on the job. 410 F.3d at 175. The court found that fact "irrelevant". *Id.* "Parker Drilling based its hiring decision (at least, in part) upon

9

whether applicants had "Past or Present Back and Neck Trouble," not whether they could, on the date of their application, complete difficult manual labor tasks." *Id.* The same is true here. Wiley's ability to perform his job for a few months is not a fact of consequence. Therefore, Marquette has met the second factor.

**C. Causal Connection**

Defendant must prove "there is a causal link between the pre-existing disability that was concealed, and the disability incurred during the voyage." *McCorpen,* 396 F.2d at 549. "[A]n intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained." *Jenkins v. Aries Marine Corp.,* 590 F. Supp. 2d 807, 813 (E.D. La. 2008). "There is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Brown,* 410 F.3d at 176 (quoting *Quiming v. Int'l Pac. Enters., Ltd.,* 773 F.Supp. 230, 236 (D. Haw. 1990)). "To find the requisite 'connection,' courts have looked to whether the injuries were identical or produced identical or substantially similar symptoms in the same part of the body." *Jenkins,* 590 F. Supp. at 813 (citing *Olympic Marine Co. v. Credeur,* 1992 WL 345322, at *3 (E.D. La. 1992)). "A causal connection exists where a plaintiff claims an injury in the exact same location." *Gifford,* 833 F. Supp. at 693 (citing *Brown,* 410 F.3d at 176).

Marquette argues the causal connection factor is met because Wiley's present injuries are in the same location as his previous injuries. Wiley argues this factor has not been met because he experienced more pain when he suffered the present shoulder injury than he had when he previously hurt his shoulder. The Court agrees with Marquette in part.

Wiley first cites *Craddock v. Bisso Marine Co. Inc.,* to support his position. In *Craddock,* the Court did not give much analysis but found there was a "material question of fact with respect to whether there is a causal link between the other injuries and the present injury." 2000 WL 669648, *2 (E.D. La. 2000). "The plaintiff was apparently without symptoms of back or neck problems for four years and indeed had been cleared for heavy duty work in 1995. As such, it is not clear that the present injury is connected with the prior injuries." *Id.*

Wiley's case differs from *Craddock.* Craddock injured his neck and back in 1989 and was last seen by a physician regarding this issue in 1995. *Id.* at 1. Here, Wiley was last seen for substantially similar pain in his right shoulder only three months prior to completing the pre-employment forms. Although he experienced more pain when he suffered the present injury to his shoulder, it was substantially similar to prior instances. Wiley reported feeling his shoulder dislocate and popping it back in place on multiple occasions. During the present injury, Wiley reported feeling like his shoulder popped out. [DN 35-1 at 153]. He stated the pain on that day was more intense and he actually "felt something bulging out the front." [*Id.* at 154]. However, the difference in the intensity of the pain felt does not change the fact that the injury was to the same part of the body—right shoulder—and it produced substantially similar symptoms—felt shoulder pop out. Therefore, Wiley's current shoulder injury is causally connected to his prior shoulder injuries.

However, the Court finds Marquette has not met its burden with respect to Wiley's neck injury. Wiley was seen on two prior occasions for neck pain. He reported feeling pain in his neck that radiated to his left arm at the first hospital visit. [DN 35-8 at 2]. At the second hospital visit in 2016, Wiley reported feeling a burning pain in his neck. [DN 35-10 at 2]. After the current injury, Wiley has reported neck pain on the right side that radiates to his shoulder and chest. [DN 39-1 at

11

PageID 183]. Marquette relies solely on the current neck injury being in the same part of the body. Although Wiley reports pain generally in the same place, the symptoms are not substantially similar. Marquette has not provided any other argument that Wiley's prior neck pain is causally connected to his current injury. Therefore, Marquette has not successfully argued the *McCorpen* defense and the Court must deny Marquette's motion with respect to his neck injury.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Marquette's Motion for Partial Summary Judgment [DN 33] is **GRANTED IN PART** and **DENIED IN PART**. Wiley's claim for maintenance and cure with respect to his shoulder injury is **DISMISSED**. Wiley's claim for maintenance and cure with respect to his neck injury remains pending.

**IT IS SO ORDERED**.

*[signature]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

July 12, 2021

cc: counsel