UNITED STATES DISTRICT COURT
WESTERN DISTRICT COURT OF KENTUCKY
PADUCAH DIVISION
Case No.: 5:19-cv-00149-TBR

KEVIN WILEY                                                                     PLAINTIFF

v.

MARQUETTE TRANSPORATION COMPANY,
LLC                                                                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Marquette Transportation Company, LLC's ("Marquette") Motion to Exclude Plaintiff's Expert. [DN 36]. Plaintiff, Kevin Wiley ("Wiley"), has responded [DN 38]. Marquette has replied. [DN 41]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Marquette's Motion to Exclude Plaintiff's Expert [DN 36] is **GRANTED IN PART and DENIED IN PART**.

**I. Background**

This suit arises out of injuries occurring October 4, 2018. On October 4, 2018, Wiley was working on the Mary Kay Eckstein vessel. He was tasked with packing rigging material. [DN 39 at 2]. Wiley was lifting and carrying barge cables, ratchets, and chains alone. [*Id.* at 3]. While working, Wiley experienced neck pain. [*Id.*]

After finishing with the wires, Wiley went to help "face the boat up." [*Id.* at 148]. While facing the boat up, the captain began tightening the winch. [*Id.* at 149]. As the winch was tightening, Wiley and his coworker, Cory, decided they needed to distance themselves from the winch. [*Id.* at 152]. Wiley was walking at a fast pace down the tow knee steps with his right hand on the handrail and felt his shoulder dislocate. [*Id.* at 153].

Wiley retained John Pierce of Range Line Maritime Consulting, LLC as his liability expert. Marquette seeks to exclude Pierce's testimony because it argues Pierce is unqualified to offer testimony.

## II. Legal Standard

When a party challenges an opponent's expert witness, this Court must assume "a gatekeeping role" to ensure the relevance and reliability of the expert's testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending Daubert to nonscientific expert testimony). Federal Rule of Evidence 702 guides the Court through this inquiry. The plain language of Rule 702 says, first, that an expert must be qualified to testify on account of his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015). The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Burgett v. Troy-Bilt LLC*, 579 Fed.Appx. 372, 376 (6th Cir. 2014) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). A qualified expert may then testify so long as his opinions will aid the factfinder and are reliable, meaning the opinions are based on sufficient data, reliable methods, and the facts of the case. Fed. R. Evid. 702(a)–(d); *see also Clark v. W & M Kraft, Inc.*, 476 Fed.Appx. 612, 616 (6th Cir. 2012); *Adler v. Elk Glenn, LLC*, 986 F.Supp.2d 851, 854 (E.D. Ky. 2013).

Where a party challenges the testimony of a proffered expert for insufficient "factual basis, data, principles, methods, or their application...the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline." *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). Although a Daubert hearing is not a

prerequisite, the court must ensure that the disputed testimony is both relevant and reliable. *See Clay v. Ford Motor Co*. 215 F.3d 663, 667 (6th Cir. 2000). In any case, the Court has considerable leeway over where to draw the line. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) ("[W]here one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997))). The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008).

### III. Discussion

#### A. Medical Causation

Marquette first argues Pierce is unqualified to testify to medical causation. Wiley states Pierce does not intend to offer testimony on medical causation, but he may properly allude "to logical causation because there is more than 'some support in the record.'" [DN 38 at 6]. Although Wiley is correct that Pierce may rely on underlying facts, he may not allude to causation. It is clear, based on Pierce's attached curriculum vitae, that he has no experience that would qualify him to offer testimony on medical causation. [*See* DN 37-5]. This Court ruled similarly in a prior case.

> In *Webb v. Crounse Corporation,* the court held the expert lacked
>
> "the necessary qualifications to opine about what weight is 'safe' to lift, or whether the weight Webb lifted caused his injuries. Though Captain Stoller might have experience in implementing safety policies and procedures for maritime companies, he has no background in medicine, biomechanics, or ergonomics…Such limited experience is insufficient to qualify him as an expert in the field of ergonomics.

2016 WL 3406515, at *2 (W.D. Ky. June 17, 2016). Due to Pierce's lack of qualifications, he may not allude to or testify to the medical cause of Wiley's injuries.

#### B. Lifting Restriction

3

Marquette next argues Pierce should not be allowed to testify to the 52-pound lifting restriction that is used in the maritime industry. Marquette argues the restriction is not applicable to the inland river towing industry and is therefore, not relevant. Pierce opines that the maritime industry has adopted various lifting standards provided by the National Institute for Occupational Safety and Health, American Society for Testing and Material, and the American Bureau of Shipping. He points to several companies who have adopted these standards. Both Marquette and Wiley rely on *Webb* to support their case.

In *Webb,* Webb's expert sought to testify about the failure of Crounse to include the maximum lifting limitations in its training materials. *Id.* Webb's expert also sought to testify regarding the safety of the weight Webb was required to lift. *Id.* The court held:

> In the main, the Court sees no reason to preclude Captain Stoller from testifying about the supposed prevalence of maximum lifting standards or practices in the maritime industry. To recover under the Jones Act, for example, a seaman must demonstrate that his employer's negligence (i.e., duty and breach of that duty) played some part in producing the injury for which he seeks damages. *See Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001); *Perkins v. Am. Elec. Power Fuel Supply, Inc*., 246 F.3d 593, 598 (6th Cir. 2001). Though not dispositive, common industry practice has long been relevant to resolving that question. *See Tindle v. Hunter Marine Transp., Inc*., No. 5:14-CV-00110-TBR-LLK, 2016 WL 270481, at *9 (W.D. Ky. Jan. 21, 2016); *Johnson v. Cenac Towing Inc*., No. CIV.A.06-0914, 2006 WL 5499506, at *3 (E.D. La. Nov. 21, 2006); *cf. Garza v. Norfolk S. Ry. Co*., 536 Fed.Appx. 517, 520 (6th Cir. 2013). Here, Captain Stoller's testimony regarding other maritime employers' practices illustrates, arguably, a general acceptance of maximum lifting standards in the maritime industry. In that respect, then, the Court finds that Captain Stoller's testimony may assist the jury in its task.
>
> Nothing in *Taylor v. TECO Barge Line, Inc.*, 642 F. Supp. 2d 689 (W.D. Ky. 2009), upon which Crounse relies, casts doubt on that conclusion. In *Taylor*, the Court precluded an expert from testifying about maximum lifting standards promulgated by the National Institute for Occupational Safety and Health (NIOSH). *Id.* at 691–92. The reason was simple: There was no evidence presented that those standards had garnered any acceptance in the maritime industry, and the expert's cursory application of them was questionable. *Id.* at 692. In this case, however, Captain Stoller relies on other maritime employers' practices and other standards that, at first blush, appear to be accepted in the maritime industry. *See* R. 37-2 at 12–13.

4

> Accordingly, the Court sees no reason to preclude Captain Stoller from testifying about the supposed acceptance of maximum lifting standards in the maritime industry.

*Id.* Nonetheless, Marquette argues this testimony is inadmissible in the present case because this standard is not recognized in the inland towing industry. However, Pierce stated in his deposition that this standard is recognized by inland towing companies. The Court here, like in *Crounse,* will allow Pierce to testify "about the supposed prevalence of maximum lifting standards or practices in the maritime industry." *Id.* Marquette is free to cross-examine Pierce on the acceptance of the standard within the inland towing industry specifically.

However, as in *Crounse,* the Court will not allow Pierce to testify about the safety of certain lifts. Pierce's curriculum vitae shows a lack of expertise in ergonomics. Pierce cannot testify to the impact of "repetitive lifts" or "excessive lifts" and the potential fatigue it caused Wiley's body. Pierce is not qualified to offer any testimony regarding the safety of lifting the amount of weight Wiley was required to lift and how that may have impacted his injuries.

## C. Job Safety Analyses (JSAs)

Pierce opines that Marquette should have completed a JSA prior to Wiley repeatedly lifting cables and other rigging materials. Pierce states a JSA would have revealed Wiley's tasks were hazardous and a different method could have been used. Marquette argues this testimony should be excluded because 1) whether a JSA was performed is a disputed fact, 2) Pierce is unqualified to make statements regarding ergonomics and biomechanics, and 3) "swapping tow" is a non-hazardous task.

"The failure to conduct a job hazard analysis for a 'routine, non-hazardous task does not violate a maritime employer's duty to exercise ordinary care.'" *Webb,* 2016 WL 3406515 at 3 (quoting *Harrison v. Seariver Maritime,* 61 Fed. Appx. 119, 2003 WL 342266, at *7 (5th Cir.

5

2003)). Here, the parties disagree on whether Wiley was completing a hazardous task. Wiley argues, and Pierce opines, that the entire process of lifting heavy materials alone was hazardous. Marquette views the issue more broadly and argues the process of "swapping tow" is common and therefore, not a hazardous activity. Marquette disputes Wiley's argument that he was asked to make repetitive lifts alone while swapping tow. The parties' dispute regarding the facts and circumstances surrounding the tasks Wiley was required to complete does not render Pierce's testimony inadmissible.

"Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis." *United States v. L.E. Cooke Co., Inc.,* 991 F.2d 336, 342 (6th Cir. 1993). Pierce's opinion has a reasonable factual basis. Further, the fact there is a dispute regarding whether a JSA was done is also not basis to exclude Pierce's testimony. These disputes go to the weight of Pierce's testimony not the admissibility. Due to the dispute regarding whether Wiley was completing a hazardous activity and whether a JSA was completed, the Court cannot exclude Pierce's testimony on these bases.

Pierce's report regarding the performance of a JSA provides, in part:

> Before requiring its deckhands to work for several hours straight making repetitive, heavy lifts and long carries on the barges, maritime companies should have assessed the risks and considered safer alternatives. In this case, such alternatives could have included staffing its tugs with enough deckhands to provide Mr. Wiley with the assistance that he requested; and/or replacing older, heavier deck equipment—such as ratchets and cables—with readily available lighter alternatives. While more research is needed to identify safer, lighter alternatives, I look forward to testimony from Marquette's managers on what JSAs, if any, were done to assess the risks of extended, heavy manual-lifting operations to its deckhands.

[DN 37-6 at 12]. The Court agrees with Marquette that Pierce is not qualified to give testimony regarding any causal link between the failure to perform a JSA and Wiley's injury. Pierce is not

qualified to testify about the cause of Wiley's injuries or about the likelihood of injury if a JSA would have been performed. However, Pierce is qualified to testify about the potential options a JSA would have revealed and how they would have differed from the activities Wiley was required to perform. Wiley has shown by a preponderance of the evidence that Pierce's testimony on JSAs is admissible.

**D. Zone of Danger**

Pierce opines that Captain Helton and Terry Solomon prematurely, and without warning, began tightening the winch which caused Wiley to rush down the tow knee steps to avoid danger. [DN 37-6 at 16]. Marquette first argues this testimony is inadmissible because it is based on Wiley's disputed version of the incident. However, as the Court has already stated, a dispute in the underlying facts does not render Pierce's testimony inadmissible. Cory Tolley testified in his deposition that a warning was given prior to the winch being activated. Wiley argues no warning was given. This dispute is grounds for cross-examination and consideration by the jury. "When the parties dispute the facts underlying the expert's opinions, they may address these issues on cross-examination in light of the facts that emerge at trial." *Boudreaux v. Scott's Boat Rentals, LLC,* 2016 WL 9406087, at *4 (E.D. La. Apr. 20, 2016). Pierce's testimony cannot be excluded on this basis.

Marquette next argues this testimony is inadmissible because Pierce never visited the Mary Kay Eckstein and his opinion is based on photographs of a different vessel and one photograph of the Mary Kay Eckstein. In a declaration, Pierce states his opinion is based on his experience with similar vessels, pictures of the Mary Kay Eckstein, and deposition testimony. [DN 38-4 at 11-12]. Marquette also points to the fact Pierce "mistakes Plaintiff's path down the tow knee steps as going from the front of the boat to the back of the boat." [DN 37 at 10]. However, "[v]igorous cross-

7

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596 (citing *Rock v. Arkansas,* 483 U.S. 44, 61 (1987)). Pierce's incorrect opinion regarding the direction of the tow knee steps does not render his opinion that Wiley was in a "zone of danger"—based on deposition testimony, experience, and photographs—inadmissible. Cross-examination is the proper forum to argue that discrepancy and Pierce's failure to visit the vessel.

Marquette also cites to *Webb* to argue Pierce merely recites Wiley's opinion. In *Webb*, the court held, "[w]here an expert merely offers his client's opinion as his own, that opinion may be excluded." 2016 WL 3406515, at *3. However, as this Court found above, Pierce's opinion is based on more than Wiley's testimony. Therefore, the Court finds this testimony admissible.

### E. Stop Work Authority (SWA)

Pierce opines that Wiley properly used his SWA when he asked for assistance with lifting cables and continued to perform his tasks as instructed. Marquette first argues this testimony should be excluded because the testimony does not require special knowledge and the opinion is based on Wiley's disputed account. The Court agrees with Wiley that a jury would not be familiar with SWA or how a worker is supposed to invoke it. A jury would be assisted by having an expert testify to this matter. Therefore, Marquette's argument that this testimony does not require any specialized knowledge is incorrect.

Marquette argues again that this testimony is inadmissible because there is a dispute regarding whether Wiley was alone completing his work. Marquette is correct that the jury must make a credibility determination regarding whether Wiley was alone or reported his concerns to his supervisor. However, this dispute does not render Pierce's testimony inadmissible. The jury is

entitled to ascertain the credibility of the underlying fact witnesses and subsequently consider the credibility of Pierce's testimony regarding the process of SWA.

Marquette next argues "the remainder of Pierce's opinion regarding stop work authority is based on conclusions regarding ergonomics, biomechanics and medicine that he is unqualified to make." [DN 37 at 12]. The Court has already held that Pierce is unqualified to testify regarding safe lifting weights. Therefore, Pierce may not offer any testimony regarding safe lifting weight/techniques with regard to SWA.

Pierce offers a variety of statements arguing Marquette is attempting to "blame the victim" and it is unreasonable for Marquette to assert contributory negligence. Marquette argues these statements are inadmissible because they prejudice the jury and invade "the province of the jury regarding Plaintiff's contributory negligence." [*Id.*] Wiley does not respond to these arguments. The Court agrees with Marquette. These statements do nothing to assist the jury and essentially offer a legal conclusion. The Court will instruct the jury on contributory negligence and it is the jury's duty to determine if it is a reasonable defense. *See Webb,* 2016 WL 3406515, at 4.

Finally, Marquette argues Pierce's opinion on the "Offshore Industry's Ultimatum to Its Workers" is not relevant to this case because Marquette is not in the offshore industry. Wiley, again, does not respond to this argument. The Court agrees with Marquette that practices within the offshore industry are not relevant to Marquette. This differs from customs in the maritime industry in general because Marquette is a part of that industry even if it does have its own customs within its specialized industry. Therefore, this statement will be excluded.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Marquette's Motion to Exclude [DN 36] is **GRANTED IN PART and DENIED IN PART**.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

July 16, 2021

cc: counsel